GARDNER *v*. RUSSELL.

1. TRIAL—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—AUTOMOBILES—. INSTRUCTIONS—REPETITION.

In an action for personal injuries, caused by a collision between plaintiff's motorcycle and defendant's automobile at a street intersection, the repetition by the trial judge of the fact that plaintiff could only recover if he established by a preponderance of the evidence the fact that he himself was free from contributory negligence, and that defendant was guilty of negligence, *held*, not prejudicial to plaintiff, since it was a correct statement of the law.

2. SAME—DAMAGES—INSTRUCTIONS.

The use by the trial judge of the language, "If you arrive at the point when damages are assessed," where the facts were in dispute, *held*, not objectionable as giving the jury to understand that it was very questionable if they would ever arrive at that point.

3. SAME—PREPONDERANCE OF EVIDENCE—INSTRUCTIONS.

The use by the trial judge of the language, "Now, a preponderance of evidence does not mean number of witnesses. It means that evidence, which taken in connection with your experience as honest and experienced and intelligent men, convinces you of its truthfulness," taken with the charge as a whole, *held*, not reversible error.

4. SAME—AUTOMOBILES—CITY ORDINANCE—INSTRUCTIONS.

Where the city ordinance governing the use of the streets by vehicles was introduced in evidence, the trial court might with propriety have called the attention of the jury to said ordinance, yet where it was a question of fact as to whether plaintiff or defendant reached the street intersection first, the general instruction that "All men must conform to the law of the road," *held*, sufficient.

5. SAME—INSTRUCTIONS—CHARGE AS WHOLE.

While the charge of the court that "Negligence is the lack of conduct that is thoughtful and lawful," standing alone, might be open to criticism, yet when taken in connection with what was further said on the same subject, *held*, not reversible error.

On liability for collision of automobile with bicyclist, see note in 28 L. R. A. (N. S.) 944.

Error to Ingham; Collingwood (Charles B.), J. Submitted June 10, 1920. (Docket No. 41.) Decided September 30, 1920.

Case by John H. Gardner against Isaac W. Russell for personal injuries. Judgment for defendant. Plaintiff brings error. Affirmed.

*Frank L. Dodge* and *D. G. F. Warner*, for appellant.

*Brown & Kelley*, for appellee.

This is a suit for damages for an alleged negligent injury to the plaintiff. While the evidence on some material points is in sharp conflict, it appears that on the 15th of October, 1918, plaintiff, then employed as a police officer by the Olds Motor Works in the city of Lansing, was riding to his work on a motorcycle, accompanied by one Frank Eno, another officer employed by the same company, who occupied the rear seat. They were proceeding south on Pine street (a much-traveled north-and-south highway) and as they arrived at the intersection of Washtenaw street, plaintiff noticed defendant's automobile approaching from the east. There is a difference of opinion between the parties as to which reached the crossing first, neither apparently preceding the other by any considerable time.

It is defendant's claim that he was driving about 12 miles an hour and that he first thought that he could pass in front of the motorcycle. The next instant, however, he saw that this was impossible, and, in an effort to avoid a collision, swerved his car to the left and went a short distance down Pine street. Plaintiff testified (and he is corroborated by Frank Eno) that in making the turn, defendant's right front fender struck his motorcycle. Defendant denies he had any knowledge of any collision between the automobile and

the lighter vehicle, stating that he was not aware that anything unusual had occurred until he heard the motorcycle fall behind him. He claims further that from the time he commenced to change the course of his car until he brought it to a stop, plaintiff's machine was in his rear, and consequently that it would have been impossible for the front fender to have struck the motorcycle.

The evidence is in conflict as to the relative speed of the machines. Defendant testified that he first saw the motorcycle when it was about 185 feet from the crossing and that it was then traveling between 15 and 20 miles an hour, and that he did not again look for it until he was at the crossing, when he saw his danger. Plaintiff and Eno estimate the speed at considerably less (not more than 10 miles per hour) and the former describes in detail the precautions he took, although he admits that he did not see the automobile until he was just about to enter the intersection and that "there is no reason why I could not have seen him if I had looked before that time."

Plaintiff introduced in evidence an ordinance of the city of Lansing, the material parts of which are as follows:

"SECTION 7. All vehicles (other than motor vehicles) shall be driven or operated at a rate of speed not to exceed six miles per hour; and all automobiles, motorcycles and motor vehicles shall be driven or operated at a speed not to exceed 10 miles per hour within the fire limits, or within any city park, and fifteen miles outside the fire limits, except as herein otherwise limited or restricted.

"SECTION 12. At all street intersections except where there is a traffic officer the right-hand vehicle will have the right of way." * * *

At the conclusion of the testimony, plaintiff presented the following requests to charge, all of which were refused by the trial judge:

"1. The use of the streets and thoroughfares in this city are governed by the laws of the State and the ordinances of the city of Lansing that relate to the use of the highway, and it is made the duty of travelers in each instance to so use his right of passage over the streets and highways as not to injure another having a like right and one is responsible for an injury caused to the other, when he could have avoided it by the exercise of reasonable care on his part.

"2. Under the ordinances of the city of Lansing at the particular intersection in question, Pine street, which runs north and south, is one of the main thoroughfares in said city and a vehicle has the right of way under the ordinance that has been introduced in evidence over vehicles using Washtenaw street, so that in this instance it was incumbent upon the defendant in this case to observe this requirement and to approach said intersection with a due regard for any vehicle that might be approaching at the time in question on Pine street.

"3. The testimony of the defendant Mr. Russell in this case shows that he saw the plaintiff and the motorcycle coming at a distance of 185 feet north of the intersection and that it was coming at a high rate of speed. I charge you that if he did see the motorcycle at 185 feet north of the intersection coming at a high rate of speed, it was his duty to have the approach of the motorcycle in mind and give such attention to it, at least in his approaching said intersection and crossing it, to enable him to exercise the necessary care and precaution on his part to avoid a collision or an accident, between defendant's automobile and plaintiff's motorcycle.

"4. If you find from the evidence that the defendant was aware as he approached said intersection that the plaintiff's motorcycle was coming at a point 185 feet north of this intersection at a high rate of speed or a speed of twenty or thirty miles per hour that it then became the duty of the defendant in approaching and crossing said intersection to do so with the care and precaution that would be naturally and reasonably required under the circumstances.

"5. I charge you that the defendant's evidence

shows that when he was approaching said intersection at the time of the accident he observed the plaintiff's motorcycle 185 feet north of said intersection and that he did not observe it or notice it further until he heard the noise and saw it afterward as it was on the pavement after the accident. I charge you that you have no right to assume from the evidence that the motorcycle continued up to the intersection at the same rate of speed that defendant claims it was going when he saw it at a distance of 185 feet to the north of the intersection.

"6. I charge you that under the evidence in this case that the plaintiff had a right to expect from the defendant reasonable care on his part in approaching said intersection to enable the plaintiff to determine his own means of crossing said intersection and that this right is reciprocal and cannot be disregarded. The rate of speed of an automobile or motorcycle must at all times be reasonable and proper with a due regard to existing conditions at the time and place as in this instance for the lives and safety in the use of the intersection in question and unless you find that the defendant did exercise such reasonable care at the time in question in approaching and crossing said intersection he would be guilty of negligence and the plaintiff would be entitled to recover damages in this action providing he himself was free from negligence contributing thereto."

The charge of the court was brief, and is here quoted in its entirety:

"1. *The Court:* Gentlemen of the jury: In this case John H. Gardner brings suit against Isaac W. Russell for damages arising out of an accident in which he alleges that, while he himself was entirely free from negligence, John H. Gardner was free from negligence, Isaac W. Russell negligently caused the accident.

"2. In this case as in every case the burden of proof rests on the plaintiff and the plaintiff must convince you by the evidence and by a preponderance thereof of the truth of his claim. Now remember what the claim of the plaintiff is—that while he himself was free from

any negligence that the defendant negligently caused the accident.

"3. You have seen the witnesses and you have heard their testimony. That is your province. If John H. Gardner does not convince you by the evidence and by a preponderance thereof of the truth of his claim, your verdict must be not guilty, and that would end the case.

"4. Now preponderance of evidence does not mean number of witnesses. It means that evidence, which, taken in connection with your experience as honest and experienced and intelligent men, convinces you of its truthfulness.

"5. Automobiles, auto cycles, and bicycles and horses and wagons and pedestrians all have certain rights in the streets. The right of no one vehicle is superior to that of another, but all men must conform to the law of the road.

"6. If you find that Isaac W. Russell conducted his car in an orderly and lawful manner, without negligence and with due attention to all of the matters that were before him at the time, then he would not be negligent; because negligence is the lack of conduct that is thoughtful and lawful. Unless John H. Gardner, the plaintiff, conducted himself in a manner free from all negligence, he could not recover. You understand, gentlemen, that not every action, even though serious damage may be caused, can form the basis of a recovery of damages. Accidents may happen in which no one is to blame and the loss falls where it does fall. The law requires from each person that degree of care and prudence which an ordinarily prudent man would exercise. It does not require anything more. It does not require a special degree of intelligence, or of care. It is the care which an ordinarily prudent man will use under all the circumstances of the case; what that care is which an ordinarily prudent person should use is for you to determine under the circumstances of the case and the evidence as it comes before you.

"7. It is not the province of the court to discuss the testimony; that is for you. It is not the province of the court to tell you what the court thinks in regard to the testimony of any one person. You take the

case as it comes to you with the evidence that comes to you from the witness stand and then you determine whether under all the circumstances of tne case whether the plaintiff has proved his claim. Remembering all of the time that his claim is that the defendant was negligent while he himself was free from any negligence which contributed to the accident. In this case there is no doubt but that Mr. Gardner was injured. It is alleged and admitted that John H. Gardner was riding his motorcycle, when he had an accident; that the motorcycle fell upon his left leg and broke it and bruised him. The question for you to determine is as I have told you under the circumstances of the case and under the law, as I have given it to you, Is Isaac W. Russell responsible in damages for that accident?

"8. Now, gentlemen, if under the evidence and by a preponderance thereof, you cannot find that Isaac W. Russell was guilty as charged, your verdict will be not guilty, and that will end the case. But if, under the evidence of this case, you find that Isaac W. Russell was negligent and that John H. Gardner was free from all negligence, which contributed toward that accident, then your verdict should be guilty and under those circumstances you would proceed to assess the damages. And in assessing the damages, you should give such damages as the plaintiff is under the circumstances of the case entitled to; his expenses in the case, his doctor's bill, his bill for medicine and liniment, the amount of his wages, which he has lost during this time and for his pain and suffering. Now wages and medical bills can be estimated from the evidence that comes to you. But pain and suffering is something that is intangible. You will have to determine that from your experience as men—not to penalize any one. If you find that defendant guilty as charged, you cannot assess damages against him with the thought: 'Now that will cure him of his carelessness.' You have no right to do that. You can only estimate as reasonable and intelligent men what that pain and suffering has been worth in dollars and cents. It is an inadequate and a difficult matter to arrive at an exact estimate, but that is a part of your duty.

"9. Then, gentlemen, you will have to determine

whether Mr. Gardner is entitled to any future benefits for any damage, which may accrue to him in the future, for pain and suffering or for loss of wages in the future, if you so find. There is no testimony in this case, as I understand it, which would allow you to find that Mr. Gardner is permanently injured, but there is testimony, from which you would find that Mr. Gardner may suffer during a period of years, both from pain and suffering and from the loss of his earning capacity, and it would be your duty if under the circumstances you find a verdict of guilty, it would be your duty to estimate what those future damages would be. And in estimating that, you must remember that those damages do not accrue until Mr. Gardner has lived that period and if you estimate it for years you would have to estimate the number of years that that damage would accrue to him and then you will understand that if you assess those damages, that you would assess them in a lump sum, and that money in hand today is worth more than money due a year or two years from now. So you will have to estimate in that case the present worth or whatever future damages you may assess and you will remember that the present worth is found by dividing amount of damage which you find to be due by one plus the interest at 5% for that time, taking as a basis, the present worth of $1 due one year from now is found by dividing one dollar by $1.05 and for two years by $1.10. That gives you the amount which placed at interest, it gives you the sum, which placed at interest would amount to the damages which you assess at the end of the period for which you have assessed it.

"10. Now, gentlemen, in this case a question was asked to which I think there was no answer given and no answer should have been given, because the question should not have been asked. It related to whether Mr. Russell carried insurance. Now, gentlemen, to be very blunt and very brief with you, that is none of your business. Mr. Russell, if damages are assessed, is supposed to pay those damages himself and the introduction of the thought that possibly some one else would pay those damages for Mr. Russell was improper and I want you to free your minds from any such imputation. And in assessing damages, if you

arrive at the point when damages are assessed, eliminate from your mind any thought that any other person, firm or corporation will pay this money except Isaac W. Russell.

"11. Now, gentlemen, with just one thought in mind, I am going to leave the matter with you—that you cannot find defendant guilty until plaintiff has by the evidence and a preponderance thereof proved the truth of his claim, that is—Mr. Gardner's claim is that Mr. Russell was negligent and that he, Mr. Gardner, was free from all negligence, which contributed toward the accident. You have got to find both of those factors before you can find defendant guilty, and if you cannot find defendant guilty your verdict would be not guilty, and if you can find that to be true then you go to the question of assessing damages under the law as I have given it to you."

The jury found for the defendant. The case is before this court on 14 assignments of error, all of which are based upon the failure of the court to charge as requested and upon the charge as given.

BROOKE, J. (*after stating the facts*). The first objection urged against the charge as given is that the learned trial judge unduly emphasized by repetition the fact that plaintiff could only recover if he established by a preponderance of the evidence the fact that he himself was free from contributory negligence and that the accident was caused through the negligence of the defendant. While this statement is (perhaps needlessly) reiterated in the charge, it is a correct statement of the law and we do not think its repetition was prejudicial to plaintiff.

It is next asserted that the use of the language, "If you arrive at the point when damages are assessed," gave the jury to understand that it was very questionable if they would ever arrive at that point. The language used is very commonly employed in charges where, as in the case at bar, the facts are in dispute, and is not subject to just criticism.

It is next asserted that the use of the following language constitutes reversible error:

"Now, a preponderance of evidence does not mean number of witnesses. It means that evidence, which taken in connection with your experience as honest and experienced and intelligent men, convinces you of its truthfulness."

To this the court later added:

"It is not the province of the court to discuss the testimony; that is for you. It is not the province of the court to tell you what the court thinks in regard to the testimony of any one person. You take the case as it comes to you with the evidence that comes to you from the witness stand and then you determine whether under all the circumstances of the case whether the plaintiff has proved his claim."

We think, taken as a whole, the charge of the court upon this point is within the line of our own authorities. See *Strand* v. *Railway Co.*, 67 Mich. 380; *Dupuis* v. *Traction Co.*, 146 Mich. 151. Here the court did not instruct the jury that the number of witnesses had nothing to do with the preponderance of evidence. He simply stated that preponderance of evidence did not mean "number of witnesses."

It is next urged that the court erred in charging the jury that—

"Automobiles, autocycles, and bicycles and horses and wagons and pedestrians all have certain rights in the streets. The right of no one vehicle is superior to that of another, but all men must conform to the law of the road."

The city ordinance touching the rights of the parties had been introduced and read in evidence and the jury were by this instruction advised that it was the duty of the parties to conform to that law. While the court might, with propriety, have called the attention of the jury to the ordinance, the obligation and duty of the defendant thereunder would depend entirely upon

whether defendant reached the intersection before the plaintiff, as claimed by him, or after the plaintiff, as claimed by the plaintiff; and, therefore, the general instruction that "all men must conform to the law of the road" would seem to be sufficient.

It is urged that the court erred in charging the jury that—

"Negligence is the lack of conduct that is thoughtful and lawful."

Standing alone, this definition of negligence would be open to criticism, but in the same connection the court charged:

"The law requires from each person that degree of care and prudence which ordinarily a prudent man would exercise."

And again:

"And what that care is which an ordinarily prudent person should use is for you to determine under the circumstances of the case and the evidence as it comes before you."

The disputed questions of fact were few and the witnesses but three. We are of the opinion that, taken in its entirety, the charge fairly presented the disputed questions to the jury.

The judgment is affirmed.

MOORE, C. J., and STEERE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.